(No. 5233-

SAM WEISMAN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 9, 1972.*

BARBERA AND FRIEDLANDER, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; BRUCE FINNE, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

Claimant, Sam Weisman, filed a claim under date of May 27, 1965.

Claimant alleges in his claim that on February 14, 1964, respondent maintained and operated a certain expressway known as Dan Ryan Expressway, which expressway merged into and became designated as Calumet Expressway, at a point about 9900 South on said expressway in the City of Chicago.

Claimant further alleges that at the juncture of said underpass road with the Dan Ryan Expressway, the respondent constructed a V shaped metal guard rail approximately one and one-half feet high from the surface of the road, which guard rail was placed at the separation point of the inner lane of the northwest bound Dan Ryan Expressway and the outer lane of the intersecting road leading to the Halstead Street Underpass.

Claimant further states that the State of Illinois did one of several things which was the proximate cause of the collision and the injuries and damages sustained by claimant:

a. Allowed said guard rail to be constructed at a dangerous and excessive height above the surface of said highways at the dividing point of said highways, although respondent knew or in the exercise of ordinary care should have known that said highways were heavily traveled at that point and that northwest bound automobiles would be liable to collide into the point of said V shaped divider while in the exercise of reasonable care.

b. Failed to keep said area properly and adequately lighted in the nighttime.

c. Failed to give motorists any warning by appropriate

sign, signals, reflectors or other means of warning northwest bound motorists of the presence of said dangerous and hazardous divider on said highway. .

d. Failed to remove said dangerous divider and replace said divider with a low level concrete curb or separator, although respondent knew or should have known that said metal divider was dangerous, hazardous and unsafe for vehicular traffic prior to the happening of the occurrence herein, and although the removal of said metal divider and its replacement with a low level curb or concrete separator could have been done by said respondent at a relatively small cost.

Claimant testified that he was driving his car in a northwesterly direction on the expressway in the inner or third lane, and that somewhat to his right and in front of him in the outer or first lane was a truck; that in the second lane to his right and in front of him was a tractor and trailer; that he slowed down to let the second truck get in front of him so that he could get into the lane going northbound to the Chicago loop; that this truck interfered with his vision ahead and that he did not see the guard rail.

Claimant also testified that certain signs that appear in the photographs in evidence as claimant's Exhibits 3, 4, 5, 6 and 7 were not present on the night of the accident. The photographs in question were taken approximately one month after the accident.

Claimant testified that his automobile ran up on the guard rail and he was injured and taken to Roseland Community Hospital and from there to Jackson Park Hospital.

Claimant testified that he lost three weeks from work; that his weekly salary was $135.00 per week and that he lost approximately $2,000.00 in bonuses from his employer, Goldblatt Bros., Inc.

The testimony of the doctors and the x-rays show that the claimant had a fracture of the twelfth thoracic vertebra.

Edward Chrapla, Special Studies Engineer for the Division of Highways, produced the records of his department showing where the signs were on the expressway on the date of the accident. He also testified to the existence of a corrugated or rumble strip at the divider and that a driver at 50 miles per hour would have thirty-four seconds after seeing the signs to choose his lane before reaching the divider.

Irving Lang, a commercial photographer, called as a witness for claimant, testified that he observed a rumble strip about one hundred feet long in front of the divider.

The evidence also shows that the area in question was lighted on the evening of the accident and also that claimant had been over this road on at least one previous occasion.

Before recovery can be made by the claimant, it must be proved that he was in the exercise of due care and caution for his own safety; that the State was negligent and that such negligence was the proximate cause of the accident.

The record seems clear in that the area was well-lighted, that signs warning the approaching public of the existence of the divider were in place and, in addition, there was a rumble strip which would give every driver ample warning of the existence of the divider ahead.

The evidence is that this divider was in such a position that drivers exercising due care for their own safety would have seen the same and avoided it.

The proximate cause of this accident was the lack of due care exercised by the claimant and was not in any way the result of any act of omission by the State of Illinois. *Court of Claims, Vol. 24, Page 324.*

415

Claimant has failed to prove that he was free from contributory negligence or that the negligence of the respondent was the proximate cause of the accident.

An award to claimant is therefore denied.